E. L. SIMPSON *v.* CYRIL J. STANTON *et al.*

(No. 8624)

Submitted September 8, 1937. Decided September 28, 1937.

*William G. Johnson,* for plaintiff in error.
*Steptoe & Johnson* and *Leo P. Caulfield,* for defendant in error.

FOX, JUDGE:

On April 20, 1937, an election was held in the City of Clarksburg, to select a member of the Water Board and a member of the council from each of the nine wards of the city. In the election of the member of the Water Board, the voters of the entire city participated. Members of the council were selected by the voters of their respective wards. The term of the members of the council then in office was to end April 30th, following the election, and that of the new council to begin on the next succeeding day. Under the charter, the council in office constituted the Board of Canvassers to determine and declare the result of the election. In the seventh ward of the city, E. L. Simpson, the petitioner, and Paul W. McKinney, appellant herein, were candidates of the Democratic and Republican parties, respectively, for the office of councilman, and their names appeared on the ticket voted in that ward. Immediately under each of their names was the name of the candidate of their party for a member of the Water Board. No other names appeared on the ticket. At the head of the ticket were the respective party emblems, and immediately below each, the circle in which the voters might make a cross and vote a straight ticket, and the tickets were then designated as "Democratic" and "Republican" tickets. To the left of the name of each candidate was placed a square in which the voters could put a cross, indicating their intention to vote for a certain candidate. The vote in the seventh ward was close. A canvass of the returns showed 871 votes for Simpson and 867 votes for McKinney. A recount was demanded by McKinney, during the progress of which questions were raised as to several ballots with the result that, as these questioned ballots were counted or rejected, it appeared that Simpson and McKinney had each received 869 votes. To reach this result the Board of Canvassers rejected as void and of no effect a ballot cast by a voter who placed a cross in the circle under the Republican emblem, and also placed a cross in the square before the name of Simpson and the Democratic candidate for member of the Water Board in the Demcoratic

ticket. Simpson contended that the voter intended to vote for him; that the ballot should have been counted for him and if counted, would have shown his election.

The recount was not completed until early in the morning of April 30th and the Board of Canvassers recessed until six o'clock in the evening of that day. When convened, notice was served on the members of the Board that the petitioner herein would apply to the judge of the circuit court of Harrison County for a mandamus. The notice did not state the character of the writ sought, but along with it was delivered a copy of the petition which was afterwards filed, and which appears in the record of this proceeding, and which did set out that a writ would be asked to compel the Board to count for Simpson the disputed ballot above described, and declare his election. Later in the evening said petition was filed and a rule in mandamus (improperly termed in the record an alternative writ) was issued, returnable to 10:30 o'clock P. M. of that day. In the meantime, after the service of the notice and petition, and before the issuance of the rule in mandamus, the majority of the council met and declared the election of McKinney by the process of breaking the alleged tie as the city charter provided could be done. The defendants in the petition were nine councilmen then in office and who made up the Board of Canvassers, the city manager, the acting city clerk, and the appellant herein, Paul W. McKinney. An attempt was made to serve the rule on the defendants named therein. For some reason a majority of them were absent from their usual haunts that evening. Three of the councilmen appeared and waived service of the writ; no return of service was made as to two of them; two were served by delivery of the process to their respective wives; and the remaining two by the posting of the writ on the front door of their usual place of abode. It was served on the wife of the city clerk, and Paul W. McKinney, the party especially affected by the proceeding, appeared to the writ as will hereafter be developed.

At 10:30 P. M. McKinney made a special appearance by counsel and moved to quash the rule. The grounds

for this motion are not set out in the record, but it is stated in the brief of appellant that one of the grounds was the failure to secure personal service of the rule on a majority of the Board of Canvassers. This motion to quash the writ was overruled, and McKinney, without waiving the benefit of his special appearance, then appeared generally and asked the court for a reasonable time in which to prepare and file his written demurrer and answer. By this time it was 11:50 P. M. and within ten minutes of the expiration of the term of office of the members of the council constituting the Board of Canvassers and who were named as defendants in the proceeding. The court refused McKinney's request for time to prepare and file his demurrer and answer, and entered an order awarding a peremptory writ of mandamus commanding the casting of the disputed ballot for Simpson and a declaration that he was elected as a member of the council from the seventh ward, thus depriving McKinney of the office to which he had been declared elected. The reason for the court's order, as it appears therefrom, is "* * * that after the notice of the petition for a writ of mandamus was served upon the Board of Canvassers of the city of Clarksburg, West Virginia, and other defendants, and after the time said notice was returnable, but before the alternative writ was entered by the undersigned judge, the said Board of Canvassers did declare Paul W. McKinney elected to the office of councilman of the seventh ward of the city of Clarksburg, and the undersigned judge further assigning as his reason that the present personnel of the said Board of Canvassers would change immediately after midnight of this day, and that it was then within ten minutes of midnight. * * * ."

To this order this writ of error is prosecuted in this court.

In view of the course which this case must take, the question of service of. the rule of mandamus on the individual members of the Board of Canvassers becomes moot, because such members are no longer in office, and any action which may be taken on the merits of this controversy must be carried out by the council now in office.

However, the case of *State ex rel. Lorentz* v. *Pierson*, 86 W. Va. 533, 103 S. E. 671, is strongly persuasive to the effect that substituted service is sufficient unless it is sought to be made the basis of contempt proceedings, in which case personal service is necessary. The adoption of this rule is more easily justified where the person who is substantially affected by the controversy has been served with process or appears in the case to defend his rights.

On the record presented, two questions remain for consideration. First, the practical question of how the disputed ballot should have been counted and, second, whether or not Paul W. McKinney, the appellant herein, had an opportunity in the court below to have his contentions heard and passed upon by that court. We think the practical question as to the validity of the disputed ballot is secondary in gravity to the question which involves the privilege of every person to a reasonable opportunity to be heard in defense of his rights.

One of the treasured principles of our system of government is that no citizen shall be deprived of life, liberty or property without due process of law. These rights are guaranteed by the fifth and fourteenth amendments to the Federal Constitution, one prohibiting any encroachment thereon by the national government, the other acting upon the states. Our own constitution provides that "No person shall be deprived of life, liberty or property without due process of law and the judgment of his peers." Section 10, Article 3, Constitution. These constitutional provisions are broad enough to embrace all character of rights, whether or not they may technically be called property rights. In *Moore* v. *Strickling*, 46 W. Va. 515, 33 S. E. 274, 50 L. R. A. 279, it was held that a public office is not property within the meaning of our state constitutional provision above quoted, in which case contention was that the defendant was entitled to a jury trial, but the broader and more accepted view is as held in *Ekern* v. *McGovern*, 154 Wis. 157, 142 N. W. 595, 46 L. R. A. (N. S.) 796.

"The right to an office, though not a vested

> property right, is property in that broad sense which includes everything of pecuniary value to its possessor; but whether property in the broad sense, or merely a privilege, it is within the protection of the foregoing rule and within the constitutional guaranty of the state Constitution and guaranties of due process of law and equal protection of the laws of the Federal Constitution."

Among the fundamental rights enforced by courts in all jurisdictions, and from time immemorial, are those of notice and hearing, and equally as much stress is laid upon one as the other. Notice without opportunity to be heard would be a vain thing. The office of notice is to afford an opportunity for hearing, and the two must necessarily go together. There can be no due process of law without a fair and reasonable opportunity for a hearing on the matter in dispute. These principles are clearly stated in 6 Ruling Case Law, 446.

> "The essential elements of due process of law are notice, and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. In fact one of the most famous and perhaps the most often quoted definition of due process of law is that of Daniel Webster in his argument in the Dartmouth College case, in which he declared that by due process of law was meant 'a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.' Somewhat similar is the statement that it is a rule as old as the law that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is fairly administered."

The above quotation embraces the familiar and classic definition of due process of law used by Daniel Webster

in the Dartmouth College case, and is the generally accepted definition of that invaluable safeguard. Further reference is made to *Ekern* v. *McGovern, supra*:

> "The established principles of justice, except as otherwise constitutionally provided by statute, secures to every person the right, before being condemned, as to his person or his property, as to anything materially affecting his constitutional right to life, liberty, and the pursuit of happiness, to reasonable notice of a hearing in respect of the matter, reasonable notice of the charges against him, reasonable opportunity to be heard by himself, his witnesses and his counsel, to know the opposing evidence and oppose it with evidence according to the principles of fair judicial investigation, and to have the final determination grounded on evidence in some reasonable view supporting it."

The following authorities still further illustrate the principle. Brannon, Fourteenth Amendment, p. 138; *Kinney* v. *Beverley*, 2 Hen. & M. (Va.) 318. See also *Underwood* v. *McVeigh*, 23 Gratt. (Va.) 409, wherein Judge Christian, speaking for the court on the question of opportunity for defense, said:

> "It lies at the very foundation of justice, that every person who is to be affected by an adjudication should have the opportunity of being heard in defence, both in repelling the allegations of fact, and upon the matter of law; and no sentence of any court is entitled to the least respect in any other court, or elsewhere, when it has been pronounced *ex parte* and without opportunity of defence. An examination of both sides of the question, and deliberation between the claims and allegations of the contending parties, have been deemed essentially necessary to the proper administration of justice by all nations, and in every stage of social existence."

These are only a few of the authorities selected to show our adherence to these fundamental principles and further discussion is not considered necessary. No one, we

242

think, will question the soundness of this position; and only seeming emergency at the time of the entry of the order in the court below refusing McKinney time in which to prepare and file his demurrer and answer could have appealed to that court as warranting entry of said order. The order was not justified by the situation then existing. The fact that the term of office of the members of the then existing Board of Canvassers would expire at midnight, and within ten minutes from the time of the entry of the order complained of, would not and could not have destroyed whatever right the petitioner had to have cast for him the disputed ballot, in the event the court should have been of the opinion that he was entitled to that ballot. As a practical matter, the action commanded by the court below could not have been carried out within the term of office of those against whom the writ was directed, but it could only have been carried out by those who would succeed these officials as councilmen, and who would *ex officio* assume the duties of a Board of Canvassers and be required to carry out whatever action the court might command. The court below had taken jurisdiction of this matter and was entitled to enforce its judgments regardless of any change in the personnel of the Board of Canvassers. The fact that the members of the Board of Canvassers and of the city council, after receiving notice that a mandamus would be applied for to require them to count the disputed ballot for Simpson, ignored this notice and proceeded to declare the election of McKinney, while possibly arbitrary on their part, furnishes no sufficient excuse to deprive McKinney of his right to be heard in defense of his claim to hold the office which the council had attempted to give him. From the record here presented, it would appear that whether or not Simpson was elected depends upon how one ballot is disposed of; but it is contended that other questions were involved in the controversy over this office, that in the recount other ballots were questioned and, of course, we cannot say what other questions would have arisen had McKinney been permitted to file his demurrer and answer. We cannot say what his rights were because he

was not permitted to assert them, and in refusing this permission, he was deprived of a right guaranteed to him by the common law and by the provisions of our state and national constitutions. Holding these views, we are not disposed to consider the question raised on the particular ballot described in the petition until the appellant is given an opportunity in the circuit court of Harrison County to present his answer to the petition in this case and have a hearing thereon in that court.

If, upon a proper hearing, that court should be of the opinion that McKinney was legally elected, the declaration to that effect, made by the former council, will stand, unless appealed from and reversed. If, on the other hand, that court be of the opinion that the discarded ballot should have been counted for Simpson, and that he should have been declared elected, it has undoubted power to require that declaration on the part of the council now in office, subject, of course, to the right of appeal, and this controversy will in that manner be settled, according to the principles of the common law and our constitutional provisions guaranteeing to the parties involved that due and orderly process of law which is the cherished safeguard of every citizen against undue encroachments upon his rights and liberties.

The case is therefore remanded to the circuit court of Harrison County with instructions to permit the filing of such matters of defense as the appellant, McKinney, may be advised to file, and for the purpose of having a full hearing on the matters in controversy herein.

*Reversed and remanded.*