489 S.E.2d 503

**STATE of West Virginia ex rel. CHRIS RICHARD S., Petitioner,**

v.

**Honorable Charles E. McCARTY, Judge of the Circuit Court of Jackson County, and Lisa Dawn K.S., Respondent**

No. 23929.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 25, 1997.

Decided July 11, 1997.

**348**

Gerald M. Titus, Jr., Ronning, Palmer & Titus, Parkersburg, for Petitioner.

Kennad L. Skeen, Skeen & Skeen, Ripley, for Respondents.

PER CURIAM:

Petitioner Chris Richard S.[1] requests a writ of prohibition preventing the Circuit Court of Jackson County, Honorable Charles E. McCarty, from modifying the custody of the Petitioner's children, Megan and Lars S. The Petitioner contends that the lower court exceeded its authority in conducting a hearing and altering a prior custody order without notice to the Petitioner. We deny the requested writ of prohibition.

I.

The Petitioner and Lisa K. (hereinafter "mother") were divorced on August 1, 1995, and custody of the parties' two children was granted to the Petitioner with visitation to the mother.[2] In late November 1996, the children were residing with their mother while the Petitioner was out of state on business.[3] During that period of visitation, the mother filed a petition, entitled Petition for Ex–Parte Relief, with the lower court requesting custody of the children. The lower court conducted a hearing on December 2, 1996, without providing notice to the Petitioner and without his actual knowledge. The children's mother alleged that the Petitioner's wife, Tracy K. S., had been accused,

in June 1996, by her former husband of abusing their children, James K., and Brandon K., by spanking them with a belt and tying one of them to a chair. James had been taken to Women's and Children's Hospital after his father had noticed bruising on his buttocks. Copies of medical records indicated that bruises had been found on the thighs and buttocks of James K. While no specific allegations of improper behavior by the Petitioner were advanced, the mother indicated that she had "learned of abuse of her children at the hand of Tracy [K. S.]." The mother also indicated that the Petitioner had been out of town on business during the alleged abuse of his wife's children. The frequency of the Petitioner's business excursions and the fact that Tracy would be the caretaker for Megan and Lars during these trips was of concern to Lisa K.

At the conclusion of the December 2, 1996, hearing, the lower court transferred temporary custody to the mother, Lisa K., and the matter was referred to a family law master for hearing and recommendations regarding the permanent custody of the children. The hearing before the family law master was scheduled for January 9, 1997.

On December 3, 1996, the Petitioner learned that the lower court had entered an ex parte order granting temporary custody to Lisa K. No visitation rights to the Petitioner had been provided in the order. The Petitioner now requests a writ of prohibition preventing the lower court from transferring custody without notice to the Petitioner.

II.

▆ The parties in this matter have informed this Court that the issues presented in this appeal may have been resolved. We therefore proceed with the realization that this issue may be moot. However, in syllabus point one of *Israel by Israel v. West*

---

1. We follow our traditional practice in cases which involve sensitive facts and do not use the last names of the parties so as not to stigmatize them or their children. *See Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987); *West Virginia Dept. of Human Services v. La Rea Ann C.L.*, 175 W.Va. 330, 332 S.E.2d 632 (1985).

2. Megan was born on May 17, 1985, and Lars was born on September 16, 1987.

3. Subsequent to the divorce, the Petitioner married Tracy K. S., and the children's mother, Lisa K., married Duane P.

*Virginia Secondary Schools Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989), we explained:

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

We find that the issues raised in this writ of prohibition are sufficiently ubiquitous to justify examination and to potentially prevent revisitation of this issue in a future matter.[4]

### III.

■ Our standard of review was established in the syllabus of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977), as follows: "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." See also *Carter v. Carter,* 196 W.Va. 239, 244, 470 S.E.2d 193, 198 (1996); *Michael v. Michael,* 196 W.Va. 155, 469 S.E.2d 14 (1996).

■ In *Crone v. Crone,* 180 W.Va. 184, 375 S.E.2d 816 (1988), we explained that "[p]roceedings for modification of support and custody decrees are subject to the protection of due process under the fourteenth Amendment to the United States Constitution and Article III, Section 10 of the West Virginia Constitution." As we specified in syllabus point two of *Simpson v. Stanton,* 119 W.Va. 235, 193 S.E. 64 (1937), "[t]he due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard."

■ In syllabus point one of *Acord v. Acord,* 164 W.Va. 562, 264 S.E.2d 848 (1980), we explained that "[u]nder the provisions of W.Va.Code, 1931, 48–2–15, as amended, the custody of a child cannot be changed unless a pleading is filed making such request and reasonable notice of the hearing upon the pleading is given to the party whose rights are sought to be affected." Syllabus point two of *Acord* provides: "A decree modifying a former decree with respect to custody of a child is void in the absence of reasonable notice of the hearing upon the pleading to the party whose rights are sought to be affected." The party seeking an alteration of custody must prove a change in circumstances and that the alteration of custody would materially promote the welfare of the child. We specified this procedure in syllabus point two of *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977), as follows: "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child."

■ However, these sound principles of procedural due process and justification for alteration in custody must be tempered by the realization that where the moving party alleges imminent danger to the welfare of the child or children, the procedural due process rights of the parents must be balanced against the rights of the child or children to safety.[5] Although *Acord,* for in-

---

4. As the Arkansas Court of Appeals noted in *Jones v. Jones,* 51 Ark.App. 24, 907 S.W.2d 745 (1995), issues involving ex parte emergency relief are typically moot by the appellate stage. *Id.,* 907 S.W.2d at 748.

5. While the abuse and neglect statutes provide specific guidelines regarding temporary placement of abused and neglected children, this matter was not presented in the abuse and neglect context, and no petition alleging such has been filed. Temporary alterations in custody are permitted under the abuse and neglect statutes in certain circumstances, pursuant to West Virginia Code §§ 49–6–3(a), in pertinent part:

> Upon the filing of a petition, a court may order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department or a responsible person found by the

stance, required reasonable notice to the opposing party in a change of child custody matter, that requirement cannot be interpreted in a manner which would impede a court's authority to protect the safety and welfare of a child even where an abuse and neglect proceeding has not been filed.[6] As we recognized in syllabus point one of our recent domestic case, *State ex rel. George B.W. v. Kaufman*, 199 W.Va. 269, 483 S.E.2d 852 (1997):

> Although a court may enter an emergency order transferring custody where there are allegations of abuse or neglect without notice and full hearing if the court deems

> court to be a fit and proper person for the temporary care of the child pending a preliminary hearing, if it finds that: (1) There exists imminent danger to the physical well-being of the child, and (2) there are no reasonably available alternatives to removal of the child, including, but not limited to, the provision of medical, psychiatric, psychological or homemaking services in the child's present custody. . . .

6. While we are not presented with a factual situation identical to that contemplated by West Virginia Code § 48-2-13 (1996), the statute is also instructive on this issue. It provides that temporary relief may be granted ex parte *during the pendency* of an action for divorce, annulment, or separate maintenance. Specifically, the statute provides that ex parte relief may be granted without oral or written notice if specific findings are made, as follows:

> (e) An ex parte order granting all or part of the relief provided for in this section may be granted without written or oral notice to the adverse party if:
> (1) It appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or such party's attorney can be heard in opposition. The potential injury, loss or damage may be anticipated when the following conditions exist: Provided, That the following list of conditions is not exclusive:
> (A) There is a real and present threat of physical injury to the applicant at the hands or direction of the adverse party;
> (B) The adverse party is preparing to quit the state with a minor child or children of the parties, thus depriving the court of jurisdiction in the matter of child custody;
> (C) The adverse party is preparing to remove property from the state or is preparing to transfer, convey, alienate, encumber or otherwise deal with property which could otherwise be subject to the jurisdiction of the court and subject to judicial order under the

such an order necessary for the immediate protection of the child(ren), such order should be of limited duration, should set a prompt and full hearing on the allegations, and should apprise both parties of the scope of the hearing. In the event such emergency change is found to be warranted, the court should immediately appoint a guardian ad litem for the child.

"In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

In *Wilson v. Roseberry*, 669 So.2d 1152 (Fla.App. 5 Dist.1996), the Florida court en-

> provisions of this section or section fifteen of this article; and
> (2) The moving party or his or her attorney certifies in writing any effort that has been made to give the notice and the reasons supporting his or her claim that notice should not be required.

Section (f) of the statute provides:

> Every ex parte order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the circuit clerk's office and entered of record; and shall set forth the finding of the court that unless the order is granted without notice there is probable cause to believe that existing conditions will result in immediate and irreparable injury, loss or damage to the moving party before the adverse party or his or her attorney can be heard in opposition. The order granting ex parte relief shall fix a time for a hearing for temporary relief to be held within a reasonable time, not to exceed twenty days, unless before the time so fixed for hearing, such hearing is continued for good cause shown or with the consent of the party against whom the ex parte order is directed. The reasons for the continuance shall be entered of record. Within the time limits described herein, when an ex parte order is made, a motion for temporary relief shall be set down for hearing at the earliest possible time and shall take precedence of all matters except older matters of the same character. If the party who obtained the ex parte order fails to proceed with a motion for temporary relief, the court shall set aside the ex parte order. At any time after ex parte relief is granted, and on two days' notice to the party who obtained such relief or on such shorter notice as the court may direct, the adverse party may appear and move the court to set aside or modify the ex parte order on the grounds that the effects of such order are onerous or otherwise improper. In such event, the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

countered a lower court's decision granting the father temporary custody of the parties' children. The *Wilson* court recognized the necessity of ex parte emergency orders and stated that "such an order can be upheld where the case involves a true emergency such as where 'a child is threatened with physical harm or is about to be improperly removed form the state.'" *Id.* at 1154, quoting *Gielchinsky v. Gielchinsky,* 662 So.2d 732, 733 (Fla. 4th DCA 1995). In *Wilson,* however, the court determined that the facts as presented did not constitute an emergency since the father alleged only that the mother had taken the children to another state without the father's consent. The court noted as follows:

> More importantly, even where the trial court is authorized to enter an emergency *ex parte* modification order, in our view the court should thereafter afford the custodial parent prompt notice and opportunity to be heard.... This will not only protect the due process rights of both parties, but will also provide the trial court with greater and more reliable evidence upon which to base its decision. Moreover, it will help to avoid unnecessary rehearing of custody issues which is often devastating to the child.

*Id.*

In *Loudermilk v. Loudermilk,* 693 So.2d 666 (Fla.App.1997), the father challenged an emergency order granting the mother temporary custody of the parties' minor child without affording the father notice and an opportunity to be heard. *Id.* at 667. The Florida court reversed "because the circumstances in the instant case do not rise to the level of an emergency required to issue an ex parte order." *Id.* The mother's petition had alleged only that the mother was concerned with the son's attendance of school and the inconvenience of changing school districts. In discussing the circumstances which would justify the issuance of an ex parte order, the court acknowledged that "[u]nder extraordinary circumstances, a trial court may enter an order granting a motion for temporary custody of a child without affording notice to the opposing party." *Id.* at 667–68. "However, such an order requires an emergency situation such as where a child is threatened with harm, or where the opposing party plans to improperly remove the child from the state." *Id.*

Obviously, courts should tread carefully in such ex parte proceedings, as there is the potential for misuse of the judicial process by vitriolic domestic litigants. Our focus in reviewing ex parte orders regarding child custody is not exclusively upon the procedural due process rights afforded the parent; rather, we must evaluate the nature and severity of the threat allegedly directed toward the child. An ex parte order temporarily altering the custody of a child may be entered without notice to the affected party where the court is presented with credible evidence of an emergency situation threatening the welfare of the child. Incident to the granting of the ex parte relief, the court must schedule on an expedited basis a date for full evidentiary hearing on the custody issue within a reasonable time, not to exceed twenty days, unless the hearing is continued for good cause shown or with the consent of the party against whom the ex parte order is directed.

In the present case, the lower court was presented with evidence indicating that two children were in the physical custody of a woman who had allegedly tied one of her own natural children to a chair, and medical reports were presented indicating that one of these natural children had been bruised and required medical treatment subsequent to whipping with a belt. While we are not so naive to dismiss the possibility of fabrication or exaggeration, if a court is to temporarily err, it should be upon the side of the children. The full evidentiary hearing, which should be provided on an expedited basis and requiring notice and opportunity to be heard, will cure any evils which are thrust upon the affected parties through the ex parte emergency order.

Based upon the foregoing, the requested writ of prohibition is denied.

Writ denied.