753 S.E.2d 745

**BRITTANY S., Respondent Below, Petitioner**

v.

**AMOS F., Respondent Below, Respondent.**

No. 101634.

Supreme Court of Appeals of West Virginia.

Submitted April 17, 2012.

Decided May 24, 20120.

Joseph B. Cordell, Martinsburg, WV, for the Petitioner.

Nathan H. Walters, Walters, Krauskopf & Baker, Moorefield, WV, for the Respondent.

Joyce E. Stewart, Moorefield, WV, Guardian ad litem for the child.

PER CURIAM:

The petitioner herein and respondent below, Brittany S.[1] (hereinafter "mother"), ap-

1.  "We follow our past practice in juvenile and domestic relations cases which involve sensitive

peals from an order entered August 24, 2010, by the Circuit Court of Hardy County. By that order, the circuit court affirmed the January 13, 2010, order by the Family Court of Hardy County. The substantive order modified primary residential custody of the parties'[2] minor child, A.F., from the mother to the respondent herein and respondent below, Amos F. (hereinafter "father"). On appeal to this Court, the mother argues that the family court erred in modifying A.F.'s primary custody to the child's father and sets forth various assignments of error related thereto. Based upon the parties' written submissions and oral arguments, the record designated for our consideration, and the pertinent authorities, we find that the circuit court's affirmation of the custodial decisions made by the family court should be reversed, the transfer of custody should be stayed, and this case is remanded for a hearing to consider what custodial arrangement will promote the best interests of the child.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case is before this Court as a result of the consolidation of two underlying actions, both involving custody of the minor child, A.F., who was born August 12, 2004. In the first action, in September 2005, A.F.'s maternal grandmother[3] filed a "Petition for Permanent Legal Custody of Minor Child." By order entered January 1, 2007, the family court found that "[t]here should be an allocation of custodial responsibility with primary residence with the [petitioner mother], and secondary residence with the [respondent father]." While the court did not order the

then-current babysitting arrangements to continue, the court did recommend babysitting arrangements with the maternal grandmother, the maternal great-grandparents, and the maternal aunt to continue. The minor's father, Amos F., was granted visitation at a minimum of every other weekend.

The second action, initiated in September 2009 by the maternal great-grandparents,[4] was styled as a "Petition for Appointment of Guardian," which was filed along with an emergency motion and a motion to intervene. In that petition, the maternal great-grandparents sought guardianship of A.F. and alleged that the mother had abandoned the minor child to their care.[5] Through an ex parte order entered September 10, 2009, the family court granted the temporary care, custody, and control of A.F. to the great-grandparents, and set a hearing date for September 21, 2009. Three days prior to the hearing, on September 18, 2009, the father filed a "Response to the Petition for Appointment of Guardian," asserting that the child had not been abandoned and requesting primary custodial responsibility of A.F.

On September 21, 2009, the family court held a hearing on the petition for guardianship and ordered consolidation of the custody cases.[6] At the September 21st hearing, the great-grandparents appeared in person with counsel, the father appeared in person with counsel, and the mother appeared in person but without counsel. The mother informed the court that she had spoken with an attorney but did not feel she needed an attorney to appear given the context of the proceedings. However, as the hearing continued and it became apparent that the lower court was considering the father's request for a change in custody, the mother moved for a continu-

facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted).

2. The parties never married but did cohabitate for a brief time following the birth of their child.

3. The maternal grandmother was dismissed as a party in the court proceedings below and is not a party in this appeal.

4. The maternal great-grandparents were granted intervenors status before the family court, were

later dismissed from the case, and are not parties in this appeal.

5. The great-grandparents' petition also alleged that there were pending felony credit card charges against the mother in Virginia, as well as legal proceedings against the father related to an alleged DUI charge and an arrest warrant for driving on a suspended license.

6. The maternal grandmother was dismissed as a party, and the maternal great-grandparents were granted intervenor status.

ance to seek counsel, which request was denied.

During the hearing, the maternal great-grandparents stated that they wanted A.F.'s custody to remain with his mother and his residence to remain with them in their home. However, the lower court determined that A.F.'s temporary primary custodial responsibility should be granted to the father, with the great-grandparents receiving visitation every other weekend and the mother being allocated custodial responsibility every week from Monday evenings until Wednesday evenings.

Subsequently, on September 23, 2009, a guardian ad litem (hereinafter "GAL") was appointed for the minor child, A.F. A report by the GAL was submitted December 3, 2009. The report stated that, since the modification of custody to the father, the child's educational skills have increased, his demeanor is more outgoing, and he has bonded to a greater degree with his father. Further, the report stated that the child's mother believes that there is domestic violence in the father's home and, further, that the mother believes that the father drinks in excess. Additionally, the GAL represented that the maternal great-grandparents want A.F.'s primary custody to be awarded to his mother. Notwithstanding that fact, the GAL recommended that the father be granted primary custodial responsibility and that the mother share in custodial responsibility through allotted parenting time every week for three days. Additionally, the GAL recommended that the maternal great-grandparents have weekly contact with the infant child.

The matter came on for hearing on December 4, 2009, to consider the matters raised by the maternal great-grandparents. After submission into the record of the GAL's report, the parties asked for a short recess. Upon returning from the break, the maternal great-grandparents orally moved to withdraw their petition, which was granted. The

mother's attorney posed two procedural arguments: (1) that the proceeding should be dismissed because there was technically nothing pending before the court, and (2) that the father never alleged any substantial change in circumstances such as would warrant a change in custody.[7]

As recognized in the August 24, 2010, order by the Circuit Court of Hardy County,

[a]t that point, technically the only pleading in the matter was the Response of Amos F[.] to the Petition for Appointment Of Guardian.... Ms. S[.'s] attorney ... moved the Family Court to dismiss the matter because the pleadings were not proper since the [maternal great-grandparents] withdrew their petition. The Family Court noted the correctness of [the] position, but denied the motion finding that Mr. F[.'s] answer alleging that it was in the child's best interest for [Mr. F.] to be granted custodial responsibility would be considered as a counterclaim. Near the end of the hearing[, the mother's attorney] raised the issue that Mr. F[.] has not alleged a substantial change in circumstances.

As discussed in the circuit court order, the family court "noted the technical correctness of the position" but overruled this argument on the basis of its belated assertion and because the circumstantial changes were apparent from the mother's testimony in the record of the trial. The family court order stated that it "easily finds that the child's best interest[s] are supported only by a modification of primary physical custody to [the child's father's] home, also allowing for certain time with [the child's mother]." In its order, the family court expressed its concern that the child, while at the age of five years, still wore pull-up diapers on occasion at the home of the maternal great-grandparents. The family court found that the mother "has for the last few years left A[.F.] in [the primary care of the maternal great-grandparents] and has allowed them to control

---

7. In the father's "Response to Petition for Appointment of Guardian," the father stated, at paragraph 15, that "Respondent father is a fit and proper person to have primary custody of his son, the child subject to this action, therefore appointment of a guardian is not necessary or in the child's best interests." Further, in his prayer for relief, the father, at paragraph 1, requested

"[t]hat it is in the best interest of the minor child that the Respondent[,] Amos [F.,] be granted primary custodial responsibility of the minor child, namely A[.F.]" No other responsive assertions were made regarding the mother, any alleged substantial change in circumstances, or the best interests of the child.

aspects of the boy's life inappropriately." The lower court went on to acknowledge the father's alcohol and marijuana use, his legal problems for driving on a suspended license, as well as the fact that A.F. has started using foul language that he has overheard from his father.

The mother appealed the family court's decision to the circuit court, as well as filed a motion for reconsideration in the family court. The circuit court remanded the case to the family court to allow the family court to take further evidence, if necessary, and to rule upon the mother's motion for reconsideration. The family court reaffirmed its order from the December 4, 2009, hearing. Thereafter, the mother filed a second petition for appeal of the family court order, claiming violations of her due process rights, rules of civil procedure, statutory law, and established case law. Oral argument was held on the appeal before the circuit court in June 2010. On August 24, 2010, the circuit court entered an order that affirmed the family court orders that had been entered on September 21, 2009; December 4, 2009;[8] and March 8, 2010. The mother now appeals to this Court.[9]

## II.

### STANDARD OF REVIEW

Before this Court, the mother asserts that the circuit court erred in affirming the findings and rulings made by the family court. In this regard, we have explained that,

[i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). Because the issues in this case focus on the custody of a minor child, we are guided by the principle that "[q]uestions relating to ... custody of ... children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). Mindful of these applicable standards, we will consider the parties' arguments.

## III.

### DISCUSSION

On appeal before this Court, the mother sets forth several assignments of error, all of

---

8. While the circuit court order specifically referenced an order dated December 4, 2009, from the family court, we find this reference is likely erroneous. A hearing occurred in family court on December 4, 2009; however, the resulting order was not entered until January 13, 2010. As further support for this determination, the circuit court's August 24, 2010, order quoted extensively from the family court's January 13, 2010, order, but incorrectly referred to it as the December 4, 2009, order.

9. Thereafter, on June 22, 2011, in response to the mother's petition, the family court held a hearing and issued a "Protective Order" finding that the father had committed domestic violence against the minor child, A.F. As support for her petition, the mother produced pictures and medical reports detailing the child's bruised buttocks, as well as investigative reports wherein the father admitted to hitting the child too hard with a wooden dowel. The father urged that it was an isolated event that would not recur. The Child Protective Services (hereinafter "CPS") worker found maltreatment, but no abuse as it seemed to be an isolated event, and offered education and continuing services to the father. Conversely, the examining doctor, as well as the child psychologist, both found that the child had been abused by the father, was fearful of the father, and suffered from post traumatic stress disorder as a result of the abuse. The lower court went along with the assessment by CPS and found that it " 'makes sense' in finding maltreatment, but not finding abuse and that Respondent F[.'s] conduct was an isolated event[.]" In its September 22, 2011, order, the family court admitted that new evidence had been heard as to the parties' tendency for domestic violence during their courtship; however, the lower court found that there were no new concerns and that the previously-ordered parenting plan was in place, and that there was no change in circumstances to transfer the child's custody from the father. As proffered during oral argument before this Court, these actions were not appealed due to financial constraints and the pendency of the current action before this Court.

which turn on the issue of the proper custodial allocation of the minor child, A.F.[10] As asserted by the mother, a modification of child custody must result from a petition, hearing, and showing that there has been a substantial change in circumstances since the original decree and, further, that the change in custody would materially promote the welfare of the child. The mother contends that she was not put on notice of the allegations against her by the father so that she could prepare evidence and defend herself at the hearing. Simply stated, the case was one initiated by the maternal great-grandparents and should have been dismissed, as submitted by the mother, once the maternal great-grandparents withdrew their "Petition for Appointment of a Guardian." The mother urges that the family court erred in recognizing the father's response as a counter-petition for custody and further erred in finding that the father should be granted primary custodial responsibility. According to the mother, the lower court's modification order was the result of the use of improper procedures and improper standards.

Conversely, the father avers that the lower court's rulings should be upheld. Specifically, the father alleges that the mother never objected to the lower court's consideration of modification of custodial allocation until the final hearing even though she knew the matter before the court concerned custody of their minor child. Additionally, at the hearing, she informed the court that she had spoken with her attorney and told him that he did not need to appear at the hearing. The father continues his argument that he had no need to file a petition averring a substantial change in circumstances because the change in circumstances had been illustrated in the maternal great-grandparents' petition to the court.

This Court previously has noted that a modification of custodial arrangements requires that "a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child." *Czaja v. Czaja*, 208 W.Va. 62, 537 S.E.2d 908 (2000). Thus, this Court's review must focus not only on whether there has been a substantial change in circumstances, but also on whether a modification in custody would serve the best interests of the child.

■■■ Prior to an examination and application of the statutory mandates, however, this Court is cognizant that the mother argues that she was denied proper notice of the hearing and an opportunity to defend herself. We agree. This Court previously has instructed that custody of a child cannot be changed unless a pleading is filed making such request, and reasonable notice of a hearing upon the pleading is given to the party whose rights are sought to be affected. "The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard." Syl. pt. 2, *Simpson v. Stanton*, 119 W.Va. 235, 193 S.E. 64 (1937). *See State ex rel. Chris Richard S. v. McCarty*, 200 W.Va. 346, 489 S.E.2d 503 (1997). *Accord Harloe v. Harloe*, 129 W.Va. 1, 38 S.E.2d 362 (1946) (determining that hearing on petition for modification of custody and maintenance of children must be preceded by reasonable notice to party whose rights are sought to be affected to comply with due process of law, W. Va. Const. art. 3, § 10, with reliance on U.S. Const. Amend. XIV).

■■■ While the mother had notice of a custody issue with the great-grandparents, she had no notice of the same with the father. The father's mention in his response

10. Specifically, the mother argues that the family court erred in its findings and interpretations of the statutes and law to the facts; that the family court violated the mother's due process rights in modifying primary custodial responsibility by not providing the mother with proper notice and an opportunity to be heard on the allegations and by failing to afford her the opportunity to obtain counsel prior to the hearing on the petition for modification; that the family court erred in modifying custody without first requiring the father to plead a substantial change in circumstances in accordance with the applicable statute; that the family court violated the mother's rights by not enforcing the previous court order that required all custody disputes to be submitted to mediation; and, finally, that the circuit court erred in perpetuating the family court's errors when the circuit court affirmed the family court's findings and rulings.

of his desire to have custody of his son was not a proper pleading under the statute [11] to petition for modification, and the underlying court never should have treated it as such. Significantly, while the mother is listed as a recipient on the certificate of service attached to the father's response, the notice was signed a mere three days prior to the hearing and indicates that the manner of service was by mail. The mother's argument that she never received the father's response prior to the hearing is realistic. At the point that the great-grandparents withdrew their petition, there was nothing pending for the lower court to consider, and the proceedings should have ceased.

▪ Additionally, even had such procedural treatment been appropriate, the substantive requirements of the statute were not met so as to warrant sufficient appellate review. First, the father failed to file a petition for modification pursuant to Rule 50 of the West Virginia Rules of Practice and Procedure for Family Court, which states that "[a] petition for modification shall be in writing, specify facts which demonstrate good cause for relief, be filed with the circuit clerk, and sent to all parties...." Second, the father failed to allege any substantial change in circumstances or that the child would benefit from a change in custody. Rather, the father relied on the issues presented in a previously-withdrawn petition of a non-party. In this regard, W. Va.Code § 48–9–401 (2001) (Repl.Vol.2009) [12] provides, in pertinent part:

(a) Except as provided in section 9–402 or 9–403, a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated therein, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

"To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child." Syl. pt. 2, *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977). *See also Kinney v. Kinney,* 172 W.Va. 284, 304 S.E.2d 870 (1983) (finding error in change of children's custody to father absent evidence of altered circumstances or that change would materially promote welfare of children).

▪ As we have explained, because of the procedural posture of the case, it should have been dismissed when the maternal great-grandparents withdrew their petition. Nevertheless, the lower court conducted a hearing and entered an order, but failed to enforce the mandates of the rules and the applicable statute. Thus, the lower court orders were in error on both procedural and substantive grounds. Generally, in cases where the lower court's proceedings result in a court order that is in error or that is void,[13] this Court will reverse the ruling in the case. However, in cases that involve children, such as the one presently pending before us, this

---

11. *See* W. Va.Code § 48–9–401 (2001) (Repl.Vol. 2009), *infra.*

12. The applicable substance of W. Va.Code § 48–9–401 (2001) (Repl.Vol.2009) previously was codified at W. Va.Code § 48–2–15. The various versions of W. Va.Code § 48–2–15 required either a motion or a petition, depending on the relevant version of the statute, before a modification of custody could be considered. While the current language of W. Va.Code § 48–9–401 does not contain any prescribed writing requirement, a written pleading is still required as explained in Rule 50 of the West Virginia Rules of Practice and Procedure for Family Court.

13. *See Czaja v. Czaja,* 208 W.Va. 62, 537 S.E.2d 908 (2000) (modification of child custody must result from a petition, followed by a hearing on evidence and can only be ordered following compliance with standard established for custody

modifications); *State ex rel. Chris Richard S. v. McCarty,* 200 W.Va. 346, 489 S.E.2d 503 (1997) (decree modifying a former decree with respect to custody of child is void in absence of reasonable notice of hearing upon pleading to party whose rights are sought to be affected); *Crone v. Crone,* 180 W.Va. 184, 375 S.E.2d 816 (1988) (former wife's due process rights were violated in failing to afford her notice and an opportunity to be heard prior to modifying divorce decree to grant former husband exclusive visitation with parties' infant son *citing* U.S. Const. Amend. XIV; W. Va. Const. art. 3, § 10); *Acord v. Acord,* 164 W.Va. 562, 264 S.E.2d 848 (1980) (father's notice of wife's petition for visitation rights was insufficient to put father on notice of trial court's hearing and award of change of custody, such that award of custody was void).

Court is always cognizant of the welfare of the child or children at issue. While this case is not a model of procedural or technical clarity, or one upon which any prospective litigants should rely to support any future legal position, this Court necessarily must consider the needs of the innocent minor child. *See* Syl. pt. 1, in part, *Allen v. Allen*, 173 W.Va. 740, 320 S.E.2d 112 (1984) ("In a contest involving the custody of infant children, their welfare is the guiding principle by which the discretion of the trial court will be controlled[.]").

■ Normally, "[t]he discretion of the trial court in making an award of child custody must be guided by the conditions and circumstances existing at the time of the decree." Syl. pt. 4, *Allen, id.* However, this opinion already has determined that the previous decree of child custody to the father was in error. Due to the length of time this case has lingered in the underlying courts, as well as the length of time that the child has lived with his father, we are of the mindset that no tribunal fully is aware of the child's situation and whether there was or has been a change of circumstances. In the difficult balance which must be fashioned between the rights of the parent and the welfare of the child, we consistently have emphasized that the paramount and controlling factor must be the child's welfare: "all parental rights in child custody matters . . . are subordinate to the interests of the innocent child." *David M. v. Margaret M.*, 182 W.Va. 57, 60, 385 S.E.2d 912, 916 (1989).

Both the procedural posture of the case, as well as its implications on the innocent minor child are matters of great concern to this Court. Accordingly, because we determine that the mother's due process rights were violated, we reverse the underlying orders that transferred A.F.'s custody to his father. However, in light of the fact that the infant child has been in the father's custody since January 13, 2010, and recognizing the positive impact that stability has on a child and acknowledging the lack of information this Court has to determine the current best interests of the child, we are hesitant to make any sudden changes in the child's custody. Therefore, any transfer of custody is stayed, and the case is remanded to the Family Court of Hardy County for a full evidentiary hearing that takes into account all pertinent information that may be developed to determine what court action regarding custody will constitute the best interests of the minor child, A.F. In so doing, we instruct the family court that all properly-developed facts [14] may be considered in evaluating the conditions necessary to determine what constitutes the best interests of the child.

■ Finally, prompt resolution in such cases attempts to protect children from the turmoil associated with the lack of stability in their surroundings and in their caretakers. *See* Syl. pt. 3, in part, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991) ("It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians."). Recognizing the amount of time between the lower court's order and the finalization of the appeal process before this Court, we remind the parties that the remand proceedings should be disposed of forthwith.[15]

## IV.

## CONCLUSION

Based on the foregoing, we reverse the underlying orders that transferred the minor child's custody to his father. However, further transfer of custody is stayed, and this case is remanded to the Family Court of Hardy County for a full evidentiary hearing to determine the best interests of the minor

---

**14.** To the extent that the lower court conducts proceedings to determine the appropriate custodial allocation of the minor, either party should be allowed to file a proper petition for modification so that the lower court has a jurisdictional foundation upon which to rule.

**15.** "Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. pt. 1, in part, *In Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). Further evidencing the priority placed on cases involving children, this Court has stated that "matters involving . . . children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible." Syl. pt. 5, in part, *id.*

child. The lower court proceedings are directed to be convened as expeditiously as possible. The Clerk of this Court is directed to issue the mandate in this case forthwith.

Reversed and Remanded.