IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 19-0786

_____

FILED
March 12, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DAVID C.
Respondent Below, Petitioner

v.

TAMMY S.,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
Honorable Tod J. Kaufman, Judge
Civil Action No. 18-FIG-94

REVERSED AND REMANDED WITH DIRECTIONS
_____


Submitted: January 26, 2021
Filed: March 12, 2021

Michelle L. Johnson, Esq.
Johnson Law Office, PLLC
Eleanor, West Virginia
Attorney for David C.

Heather Olcott, Esq.
Olcott Law Office
Charleston, West Virginia
Guardian ad Litem


JUSTICE HUTCHISON delivered the Opinion of the Court.

1. "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2. "'The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard.' Syl. Pt. 2, *Simpson v. Stanton,* 119 W. Va. 235, 193 S.E. 64 (1937)." Syl. Pt. 3, *State ex rel. Chris Richard S. v. McCarty*, 200 W. Va. 346, 489 S.E.2d 503 (1997).

3. "A court, in defining a parent's right to visitation, is charged with giving paramount consideration to the welfare of the child involved." Syl. Pt. 1, *Ledsome v. Ledsome*, 171 W. Va. 602, 301 S.E.2d 475 (1983).

4. "A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent

to the custody of his or her infant child will be recognized and enforced by the courts."

Syl., *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960).

**HUTCHISON, Justice:**

The petitioner, David C.,[1] appeals the July 29, 2019, order of the Circuit Court of Kanawha County that denied his appeal of the June 21, 2019, order of the Family Court of Kanawha County, which modified an infant guardianship order to prohibit him from having any contact with his child, J.B. In this appeal, David C. contends that the family court erred by not giving him adequate notice or the opportunity to be heard at the final hearing in this matter. Upon consideration of the parties' briefs and oral arguments, the submitted appendix record, and the pertinent authorities, we reverse the final order of the circuit court and remand this case for a full evidentiary hearing before the family court so that all relevant information can be considered to determine whether visitation between David C. and J.B. is in the child's best interest.

## I. Facts and Procedural Background

David C. and Brandice B. are the biological parents of J.B., who is now fourteen years old. Since her birth, J.B. has resided in the home of her maternal grandmother, Tammy S., the respondent herein, and her paternal grandfather, David C., Sr.[2] At times, her mother, Brandice B., has also lived in the home. Although David C. has continuously paid child support, he has not been a part of J.B.'s life and never had contact

---

[1] In cases involving sensitive facts, we use initials to identify the parties. *See* W.Va. R. App. Proc. 40(e); *see also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] The record in this case indicates that Tammy S. and David C., Sr. are married.

1

with J.B. until two weeks before the final hearing in this matter when he visited her for the first time.[3]

The record indicates that Tammy S. first obtained an infant guardianship of J.B. in 2011 because of illegal drug use by Brandice B. After Brandice B. sought treatment for her drug addiction, the guardianship was terminated. On April 30, 2018, Tammy S. filed another petition for guardianship of J.B., again because of Brandice B.'s drug use. At the initial hearing on the petition in 2018, Tammy S. indicated that she did not know where David C. was living and, thus, was instructed by the family court to file a Petition for Publication with the circuit clerk's office to provide him notice of the guardianship proceeding. The Notice of Publication was printed in the Charleston Gazette newspaper on May 30, 2018. David C., who lives in Raleigh County, contends that he never received notice of the 2018 guardianship proceeding. As a result, he was not present at the hearing on July 10, 2018, during which Tammy S. was granted guardianship of J.B.

On February 6, 2019, Brandice B. filed a motion to terminate Tammy S.'s guardianship of J.B. The only named respondent was Tammy S. On March 14, 2019, the family court appointed a guardian ad litem ("GAL") to investigate the matter and file a report and recommendation. According to the GAL, she located an address for David C.

---

[3] According to his brief, David C. has been married to Misty C. for more than eighteen years and has three other children, two of whom are adults.

in a criminal record and mailed him a letter to give him notice of her investigation and Brandice B.'s motion to terminate the guardianship.

The GAL reported that she received a phone call on April 10, 2019, from Tammy S. who told her that David C. and his wife, Misty C., came to her home that day and visited with J.B. for the first time in her life. The GAL says she advised Tammy S. to not allow any further visits until the hearing on the motion to terminate the guardianship, which was scheduled to occur eleven days later. The GAL also reported that David C. called her that same day, and she discussed with him his history of alcohol abuse and violence that she discovered in his criminal record.[4] According to the GAL, she told David C. that if he wanted visits with J.B., he needed to be present at the hearing on Brandice B.'s motion to terminate the guardianship.

The day after her phone call with David C., the GAL filed her report with the family court. She sent a copy of the report to Tammy S. and Brandice B. The GAL says she did not send a copy to David C. because the report not only concerned J.B., but also her half-sister, who was also under the guardianship of Tammy S.[5] Because the report

---

[4] The record indicates that this phone call lasted twelve minutes.

[5] Both J.B. and her sister, C.D., live with Tammy S. In 2018, Tammy S. was awarded guardianship of both girls. Because the children have different fathers, a separate case number was assigned to each child, and the family court held separate hearings.

contained confidential information regarding J.B.'s half-sister, the GAL did not disclose it to David C., who has no biological relationship to J.B.'s half-sister.[6]

The hearing regarding Brandice B.'s motion to set aside the guardianship was held on April 22, 2019. Brandice B., Tammy S., David C.,[7] and the GAL were all present at the hearing. In response to questioning from the family court judge during the hearing, David C. acknowledged that he had never been present in J.B.'s life. After hearing testimony from Brandice B., the family court denied her motion to terminate the guardianship.[8] The family court then ruled that David C. could have no contact with J.B. for at least six months. With respect to David C., the family court made the following findings in its final order:

> 7. That Respondent, David [C.], has failed to be involved in his child's life since her birth, twelve years ago, but is now requesting parenting time with the child.
>
> 8. That Respondent, David [C.], has a history of alcoholism and violence toward his father, the paternal grandfather, and the paternal grandfather lives in the household with the minor child.[9]

---

[6] Charles D. is the father of C.D. and is the brother of Misty C.

[7] David C. was self-represented at this hearing as were Tammy S. and Brandice B.

[8] With respect to Brandice B., the family court found that "she is continuing to use drugs, continues to be unemployed, and has shown no changes in her circumstances to warrant termination of the infant guardianship."

[9] This finding was based on the guardian's testimony and report, which relayed an incident that occurred in 2007 as follows: "David [C.,] Jr. and/or Misty beat up Brand[ice] [B.], then David [C.,] Sr. came to David [C.,] Jr.'s Memorial Day Cookout drunk, with a gun and allegedly shot at David [C.,] Jr. David [C.,] Jr. opened fire in return. There were

4

9. That Respondent, David [C.], recently appeared at Petitioner's house along with his wife and three teenage/adult children to visit with the minor child, after having no contact with her prior to this event.

10. That this Court finds it is in the minor child's best interest to have no contact with Respondent [Brandice B.] or Respondent [David C.] at this time.

(Footnote added). The family court then made the following orders with respect to David C.:

4. That the Court is, *sua sponte*, modifying the underlying infant guardianship order prohibiting any contact between Respondent David [C.], his wife, or his children and the minor child, based on Respondent [David C.'s] lack of interest in the child for the last twelve years, his history of violence toward his father, and his history of alcoholism.

5. That the Respondent David [C.] may petition this court for time with the child after six months if he can show he has been clean and sober for six months and is attending Alcoholics Anonymous classes on a regular basis.

Following entry of the family court's decision, David C. obtained counsel and filed a motion for reconsideration with the family court, which was denied. He then filed an appeal with the circuit court. By order entered July 29, 2019, the circuit court denied the appeal, finding the family court's decision was not clearly erroneous and not an abuse of discretion. This appeal followed.[10]

---

several people including children around [the] yard at the time of the shooting." It appears that David [C.,] Sr. was convicted of wanton endangerment as a result of this incident and served two years in prison. David C. was charged with illegal possession of a firearm.

[10] Respondent Tammy S. did not file a brief and did not participate in this appeal.

## II.  Standard of Review

Our standard of review is set forth in the syllabus of *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004), as follows:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

## III.  Discussion

In this appeal, David C. asserts several assignments of error that essentially contend the family court erred by not giving him adequate notice or the opportunity to be heard before sua sponte prohibiting him from having any contact with J.B.  David C. does not challenge Tammy S.'s guardianship of J.B., nor does he seek custody of J.B.  Rather, he only requests that he be permitted to contact and visit his child.

David C. contends that he had no notice that Brandice B.'s motion for termination of the guardianship could affect his ability to visit with J.B.  In other words, David C. argues that he was not adequately informed that the family court could preclude him from visiting J.B.  He also contends that he was not given the opportunity at the hearing to refute the allegations of the GAL that he has a history of violence and alcoholism.  He further notes that he was not given a copy of the GAL's report prior to the hearing, which he maintains was error.  Finally, David. C. argues that the evidence considered by the

6

family court was inaccurate and incomplete and that he should have been given the opportunity to present supplemental evidence.

It is axiomatic that "'[t]he due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard.' Syl. Pt. 2, *Simpson v. Stanton,* 119 W. Va. 235, 193 S.E. 64 (1937)." Syl. Pt. 3, *State ex rel. Chris Richard S. v. McCarty*, 200 W. Va. 346, 489 S.E.2d 503 (1997). Regarding motions to modify child support and custody orders, this Court has made clear that "the protection of due process under the [F]ourteenth Amendment to the United States Constitution and Article II, Section 10 of the West Virginia Constitution" must be afforded to the litigants. *Crone v. Crone*, 180 W. Va. 184, 186, 375 S.E.2d 816, 818 (1988). Moreover, "[w]e have recognized that noncustodial visitation is an important natural parental right closely related to the issue of custody and meriting the same due process protections." *Id.; see also J.M.S. v. H.A.*, 161 W. Va. 433, 436, 242 S.E.2d 696, 698 (1978) ("To deprive a parent of visitation rights without a hearing would constitute a denial of due process and equal protection under our state and federal constitutions. W.Va.Const., Art. III, s 10; U.S.Const., 14th Amend."); *Blake v. Blake*, 172 W. Va. 690, 692, 310 S.E.2d 207, 210 (1983) ("[D]ue process entitles [a parent] to a hearing on the question of whether further visitation would be in the best interests of the child.").

7

In this case, the record reflects that David C. received notice of the hearing on Brandice B.'s motion to terminate the guardianship by letter from the GAL.[11]  In addition, David C. spoke by phone with the GAL prior to the hearing, during which she claims that she advised him to come to the hearing if he wanted to be able to visit J.B. However, upon review of the record, we find that these communications with the GAL did not adequately provide notice to David C. that the family court could allocate parenting time or prohibit him from visiting his child.

The transcript of the hearing shows not only the impromptu nature of the decision of the family court, but also the lack of any opportunity for David C. to be heard regarding his alleged history of violence and alcoholism.  After allowing Brandice B. to present her argument for terminating the guardianship and then denying her motion, the family court turned to David C. and stated:

> How dare you simply roll up there with your wife and your kids to see this child?  That's shameful and I'm not granting you any parenting time.  I'm prohibiting contact with you and this child because—because of what I understand to be the violent past between you and your father and your alcoholism.[12]
>
> Now, once you get clean and get off the alcohol completely and you can prove to me that you are clean and

---

[11] According to the GAL, David C. acknowledged that he received her letter during her phone conversation with him on April 10, 2019.  The exact content of the letter is unknown as it is not a part of the record in this case.

[12] Earlier in the hearing, the GAL testified about her investigation and report and relayed the events of David C.'s April 10, 2019, visit with J.B.

> sober and you've been going to AA for at least a solid six-month period, I will entertain a petition to modify—but you are prohibited—you and your wife both are prohibited from contacting or seeing this child. Are we clear about that?

(Footnote added). David C., who was not represented by counsel, simply responded, "Yes, ma'am."

David C. contends that if he had been given the chance, he would have presented evidence to show that he does not have a problem with alcohol and that, as a coal miner, he has been randomly tested for drugs and alcohol for more than sixteen years. According to David C., after the hearing, he submitted, by counsel, evidence from a mental health provider stating that he did not need treatment for alcoholism. Yet, the family court refused to reconsider her ruling. David C. also claims that the GAL's report contained false information and that because he did not receive a copy of the report prior to the hearing, he was unaware of the issues that were of concern and was never given the opportunity to address them.

The GAL's report was prepared pursuant to West Virginia Code § 48-9-301 (2001), which authorizes family courts to order a written investigation to assist them in determining issues involving child custody matters. The statute provides that

> [t]he investigator shall deliver the investigator's report to counsel and to any party not represented by counsel at least ten days prior to the hearing unless a shorter time is ordered by the court for good cause shown. The investigator shall make available to counsel and to any party not represented by counsel the investigator's file of underlying data and reports,

9

> complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (b) of this section, and the names and addresses of all persons whom the investigator has consulted. Any party to the proceeding may call the investigator and any person whom the investigator has consulted for cross-examination. A party may not waive the right of cross-examination prior to the hearing.

W. Va. Code § 49-9-301(c). As noted above, the GAL did not provide her report to David C. because she did not want to disclose the confidential information contained therein concerning J.B.'s half-sister.[13]

Based on all the above—in particular, the inadequate notice and lack of opportunity to refute the allegations of the GAL made in a report that he never received— we find that David C. was not afforded his due process rights as the father of J.B. We, of course, recognize that the family court's decision was aimed at protecting the child. Indeed, "[a] court, in defining a parent's right to visitation, is charged with giving paramount consideration to the welfare of the child involved." Syl. Pt. 1, *Ledsome v. Ledsome*, 171 W. Va. 602, 301 S.E.2d 475 (1983); *see also* Syl. Pt. 5, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996) ("In visitation as well as custody matters, we have traditionally held paramount the best interests of the child."). However, the rights of the father cannot simply be ignored. This Court has long recognized that

---

[13] During oral argument, the GAL acknowledged her mistake and recognized that when more than one child is involved in a court-ordered investigation under West Virginia Code § 48-9-301, a separate report for each child should be made to ensure confidentiality while complying with the mandates of the statute.

10

> [a] parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Syl., *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960). David C. was not afforded the opportunity to refute the family court's assumption that he was currently unfit to have contact with his child, and thus, was deprived of a fair hearing. Because David C.'s due process rights were violated, we must reverse the circuit court's order and remand this case for a full evidentiary hearing before the family court so that all relevant evidence can be developed and information gathered to determine whether visitation with David C. is in J.B.'s best interest.[14]

---

[14] David C. also assigned error to receiving notice of Tammy S.'s 2018 petition for guardianship by publication. He claims that Tammy S. could have easily obtained his address and that the affidavit she completed saying she was unaware of his whereabouts was false. However, David C. produced no evidence to support this assertion, and when a party cannot be located, notice by publication is permitted by Rule 5 of the Rules of Practice and Procedure for Minor Guardianship Proceedings. Accordingly, we find no merit to this argument. David C. also asserted error based on the circuit court's denial of his appeal without briefing or oral argument by the parties. Because we are remanding this case for a full evidentiary hearing, we do not need to consider this issue. Finally, David C. argues that this case should not have been assigned to Judge VanMeter because other family court judges presided over matters involving the parties, and he requests that upon remand, a new family court judge be assigned to the case because he does not believe Judge VanMeter will give him a fair trial. We decline to address this issue because it is not properly before this Court. *See State ex rel. Pritt v. Vickers*, 214 W. Va. 221, 223 n. 1, 558 S.E.2d 210, 212 n. 1 (2003) (explaining that "the matter of judicial recusal and disqualification is a matter of discretion reposed solely in the presiding judge and the Chief Justice of this Court").

## IV.  Conclusion

Accordingly, for the reasons set forth above, the July 29, 2019, order of the Circuit Court of Kanawha County is reversed, and this case is remanded to the circuit court with directions to remand this case to the Family Court of Kanawha County for a full evidentiary hearing to determine whether visitation between David C. and J.B. is in the child's best interest.

Reversed and Remanded with Directions.