HENRY A. GREEN

*v.*

BOARD OF EDUCATION OF MARION COUNTY

(No. 10140)

Submitted September 27, 1949. Decided November 1, 1949.

Lovins, Judge, not participating.

*Tusca Morris,* for plaintiff in error.

Defendant in error, not appearing in person or by counsel.

Fox, Judge:

This case comes to us on a writ of error to the judgment of the Circuit Court of Marion County, entered on the 30th day of November, 1948, by which said court refused a writ of certiorari which would have brought before that court the proceedings of the Board of Education of the County of Marion, evidenced by its order dated March 15, 1948, which, in substance, dismissed the petitioner, Henry A. Green, a person holding a teacher's continuing contract, as a teacher in the public schools of that county, and assumed to terminate said continuing contract, on the grounds of ·"inefficiency and failure to perform the duties of a teacher in the Marion County Public School System." Notice of said order was given petitioner by letter mailed on March 17, 1948. To the order of November 30, 1948, this Court, on February 7, 1949, granted this writ of error.

Our decision in this case must depend upon the interpretation and application of Code, 18-7-1, as amended by Chapter 53, Acts of the Legislature, 1939, and Code, 18-7-6. The pertinent provisions of Section 1, aforesaid, as amended, read as follows:

> "Before entering upon their duties, all teachers shall execute a contract with their boards of education, which contract shall state the salary to be paid and shall be in the form prescribed by the state superintendent of schools. Every such contract shall be signed by the teacher and by the president and secretary of the board of education, and when so signed shall be filed, together with the certificate of the teacher, by the secretary in the office of the board.
>
> "A teacher's contract, under this section, shall be a continuing contract of employment and shall

remain in full force and effect except as modified by mutual consent of the school board and the teacher, unless and until terminated with written notice, stating cause or causes, to the teacher, by a majority vote of the full membership of the board before April first of the then current year, or by written resignation of the teacher before that date. Such termination shall take effect at the close of the school year in which the contract is so terminated: Provided, however, That the contract may be terminated at any time by mutual consent of the school board and the teacher, and that this section shall not affect the powers of a school board to suspend or dismiss a principal or teacher pursuant to section six (§ 1810) of this article: Provided further, That a continuing contract shall not operate to prevent a teacher's dismissal based upon the lack of need for the teacher's services pursuant to the provisions of law relating to the allocation of teachers and pupil-teacher ratios. But in case of such dismissal, the teachers so dismissed shall be placed upon a preferred list in the order of their length of service, and the school board shall give due consideration of such list and order if and when vacancies or need occur. A superintendent shall not be deemed a teacher within the meaning of this paragraph."

Section 6, aforesaid, reads as follows:

"The board of education of any district or independent district may suspend or dismiss any principal or teacher so appointed for immorality, incompetency, cruelty, insubordination, intemperance or wilful neglect of duty, but the charges shall be stated in writing and the teacher shall be given an opportunity to be heard by the board upon not less than ten days' notice, and in all cases when the board is not unanimous in its decisions to suspend or dismiss, the principal or teacher so suspended or dismissed shall have the right of appeal to the state superintendent of schools."

The petitioner, Henry A. Green, on February 6, 1944, entered into a Teacher's Continuing Contract of Employment, in the form prescribed by the State Superintendent

of Schools. This contract was renewed from time to time, and was in force and effect at the date of petitioner's dismissal as a teacher. We are only concerned with Subsections (h) and (i) thereof, which read as follows:

" (h) In pursuance of Section 1, Article 7, Chapter 18 of the Code of West Virginia, as amended by Chapter 53, Acts of the Legislature 1939, this contract is a continuing contract of employment and shall remain in full force and effect, subject to all the provisions herein set forth, except as modified by mutual consent of the Board and the Teacher, unless and until terminated with written notice, stating cause or causes, to the Teacher, by a majority vote of the full membership of the Board before April first of the then current year, or by written resignation of the Teacher before that date, and such termination shall take effect at the close of the school year in which this contract is so terminated. The expression 'Cause or causes' as in this paragraph used shall mean failure on the part of the Teacher to fulfill this contract, or violation on the part of the Teacher of a lawful provision hereof. This contract may be terminated at any time by mutual consent of the Board and the Teacher.

" (i) The power of the Board to suspend or dismiss the Teacher for immorality, incompetency, cruelty, insubordination, intemperance, or wilful neglect of duty in pursuance of the provisions of Section 6, Article 7, Chapter 18, Code of West Virginia, is in no manner impaired or affected."

On March 15, 1948, the respondent, the Board of Education, adopted what it is termed in the record as "Respondent's Unofficial Resolution," adopted by unanimous vote, which reads as follows:

"Whereas, it has been reported by Principal W. O. Armstrong of the Dunbar School, and Superintendent J. J. Straight, that Henry A. Greene, music instructor at the Dunbar School, is not an efficient and competent teacher and has been failing to perform the duties of a teacher in the Marion County Public Schools and that Principal W. O. Armstrong has on several occasions called

this inefficiency to the attention of the said Henry A. Greene, without any noticeable improvement, therefore, it is the combined recommendation of Principal W. O. Armstrong and Superintendent J. J. Straight to the Board of Education of the County of Marion that the continuing contract held by Mr. Greene as a teacher in the schools of Marion County be terminated as of May 28, 1948, and

"Therefore, be it resolved, that the Board of Education of the County of Marion hereby determines in accordance with the provisions of Section 1, Article 7, Chapter 18, of the Code of West Virginia, that the continuing contract between the Board of Education and Henry A. Greene shall be and is hereby terminated as of May 28, 1948, the said termination being due to Mr. Greene's inefficiency and failure to perform the duties of a teacher in the Marion County Public School System, and that the Secretary is hereby authorized to notify Mr. Greene of the decision of the Board of Education and·this notice, in writing, should be sent to the said Mr. Greene prior to April 1, 1948."

On April 19, 1948, the minutes of the meeting of March 15, 1948, were officially approved. Following the meeting held on March 15, 1948, the petitioner was notified by letter that:

"The Board of Education of the County of Marion, at an official meeting, which was held March 15th, 1948, did unanimously agree that your continuing contract as a teacher in the schools of Marion County would be cancelled as of May 28, 1948. The reason for cancellation of this contract is inefficiency as a teacher."

On April 22, 1948, petitioner filed his petition in the Circuit Court of Marion County praying that a writ of certiorari be awarded him for a review of the aforesaid proceedings of the Board of Education, and commanding the president and members of said board, and its secretary, to certify and produce the records in said proceeding, involving the right of petitioner, as presented to and

tried by said Board of Education and the members there-of, and for general relief. On April 30, 1948, the writ prayed for was refused. Subsequent thereto, the petitioner, on May 29, 1948, was permitted to file his amended petition, and thereafter, on November 30, 1948, the writ of certiorari prayed for was again denied, to which action of the court the petitioner excepted at the time.

We think it unnecessary to go into detail as to the allegations of the original and amended petitions. Suffice to say that they each allege the invalidity and illegality of the order of the Board of Education in dismissing petitioner as a teacher on the grounds stated. It is alleged therein, and not denied, that the action of the Board was taken without any notice to the petitioner, and that his first knowledge of its action was obtained through the receipt of the letter of March 17, 1948. While the Board of Education appeared by counsel and resisted the issuance of the writ, there were no pleadings filed on its part. Therefore, there is presented to us a pure question of law, depending upon the interpretation and application, to the situation presented, of the two statutes quoted above.

A study of Code, 18-7-1, as amended, and of the teacher's continuing contract, entered into thereunder, will disclose that there is no requirement of notice and hear-ing in cases where it is proper to terminate such contract under the provisions thereof. Section 1 provides that the contract shall remain in full force and effect, except as modified by mutual consent, "unless and until terminated with written notice, stating cause or causes, to the teacher, by a majority vote of the full membership of the board before April first of the then current year, or by written resignation of the teacher before that date. Such termination shall take effect at the close of the school year in which the contract is so terminated: * * *." The section provides that the contract "shall be in the form prescribed by the state superintendent of schools", and this makes the terms of that contract important. When we go to Subsection (h) of the contract we find it there provided

that: "The expression 'Cause or causes' as in this paragraph used shall mean failure on the part of the Teacher to fulfill this contract, or violation on the part of the Teacher of a lawful provision hereof." This provision, it seems to us, was not intended to cover the offenses of immorality, incompetency, cruelty, insubordination, intemperance or wilful neglect of duty, for the reason that by Subsection (i) of the same contract it is provided that: "The power of the Board to suspend or dismiss the Teacher for immorality, incompetency, cruelty, insubordination, intemperance or wilful neglect of duty, in pursuance of the provisions of Section 6, Article 7, Chapter 18, Code of West Virginia, is in no manner impaired or affected." We treat the word "inefficiency" used in the Board's resolution as synonymous with "incompetency" used in the statute.

Apparently the cause or causes for which a teacher's continuing contract might be terminated was intended to rest on the failure of the teacher to fulfill his contract, or a violation on the part of the teacher of a lawful provision thereof, which, we think, under any reasonable construction thereof, was intended to mean his failure to appear for the performance of his duties, or the wilful violation of some provision of his contract. The practices mentioned in Code, 18-7-6, cannot be treated as express violations of the contract, but as independent acts of wrongdoing. Furthermore, in this particular case, if the alleged inefficiency may be treated as a violation of the implied term of the contract that the teacher should instruct efficiently and competently, such implied duty relates to an indefinite standard, and the teacher is given express procedural safeguards to defend his efficiency and competency as an instructor by Code, 18-7-6. Of course, the teacher undertook to perform the services contemplated by his contract which was to make himself at all times available for service. There is nothing in Section 1, or in the contract executed thereunder, that makes any reference to immorality, incompetency, cruelty, insubordination, intemperance or wilful neglect of duty, and

the form of the contract prescribed by the State Superintendent of Schools clearly indicates that, in his opinion, the procedure for the suspension or dismissal of a teacher for "incompetency" was that provided for in Code, 18-7-6. The inclusion of Subsection (i) in the prescribed contract makes this manifest. Even if contemporaneous construction did not exist, this Court would be loath to give to the statute a different construction, for the reason that in a matter of such importance, involving the reputation and standing of a citizen, surely in such a situation the policy of the law, and the intent of the Legislature supports the theory that notice and hearing should precede judgment.

Aside from the construction of Section 1, aforesaid, on the part of the State Superintendent of Schools, this view of the case is supported by the provisions of Code, 18-7-6, quoted above. That section provides that a teacher may be suspended or dismissed for immorality, incompetency, cruelty, insubordination, intemperance or wilful neglect of duty, but contains this important provision: "* * * but the charges shall be stated in writing and the teacher shall be given an opportunity to be heard by the board upon not less than ten days' notice, and in all cases when the board is not unanimous in its decisions to suspend or dismiss, the principal or teacher so suspended or dismissed shall have the right of appeal to the state superintendent of schools." Of course, a dismissed teacher does not have such right of appeal, where the action of the Board, as in this case, was unanimous. And even so, it has been held in *State ex rel. Board of Education* v. *Martin,* 112 W. Va. 174, 163 S. E. 850, that:

> "The provision of Code 1931, 18-7-6, which allows appeal by a dismissed teacher (including supervisor) to the State Superintendent of Free Schools from an order of dismissal entered by the local board, where the board is not unanimous in its action against him, is not exclusive of the circuit court's right to review the dismissal on certiorari."

Sections 1 and 6, Article 7, Chapter 18 of the Code were both enacted at the same time, as a part of the Code of 1931. The amendments made to Section 1 by the 1939 Legislature do not affect this controversy. It seems clear to us that the Legislature did not intend that a teacher should be dismissed from service, on the grounds stated in Section 6, without a notice and hearing. We think. therefore, that the Board of Education, in proceeding, as it evidently did, under Section 1, misconceived its power; and that it should have proceeded under Section 6, by giving to the petitioner notice of the charges against him, with the opportunity to make defense thereto.

We cannot too often repeat that under our system of government no citizen can be condemned of a crime, or deprived of a legal right, without notice and reasonable opportunity to be heard. We think this case falls within the reasoning of the rule laid down in the case of *Simpson* v. *Stanton,* 119 W. Va. 235, 193 S. E. 64, and the authorities there cited. At the date of his dismissal, petitioner held a teacher's continuing contract which was in full force and effect, and certainly that contract vested in him certain rights which the other party to the contract was bound to respect. It is not necessary that we treat those rights as property rights; they are probably something less than property rights; but, whatever their nature, the statute makes plain provisions as to the manner in which the beneficiary thereof may be divested of what the contract gave him. Petitioner's dismissal as a teacher would, under the terms of the March 15, 1948, resolution, operate as a termination of his contract, and, in our opinion, he could only be dismissed as a teacher, under Code, 18-7-6, on charges regularly made, containing a reasonable statement of the nature thereof, and with reasonable opportunity to be heard in defense of the charges so made. This procedure the Board of Education denied petitioner, and in so doing we think violated the provisions of Code, 18-7-6.

We, therefore, reverse the order of the Circuit Court

of Marion County refusing the writ of certiorari prayed for, and remand the proceeding to that court with directions, and for further proceedings in the cause, not inconsistent with this opinion.

*Reversed and remanded with directions.*