**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Alison S.,**
**Respondent Below, Petitioner**

**vs.) No. 21-0197** (Cabell County 21-DV-AP-3)

**J.L.-1 and J.L.-2, by Robert L.,**
**Petitioners Below, Respondents**

**MEMORANDUM DECISION**

Self-represented petitioner Alison S.[1] ("petitioner mother") appeals the March 15, 2021, amended order of the Circuit Court of Cabell County that issued a domestic violence protective order ("DVPO") to her minor children, Respondents J.L.-1 and J.L.-2.[2] The DVPO petition was filed by Respondent Robert L. ("respondent father"). Respondent father, by counsel Jennifer Dickens Ransbottom, filed a summary response in support of the circuit court's order. Guardian ad litem Robert E. Wilkinson, also filed a response on behalf of the minor children in support of the circuit court's order. Petitioner mother filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Because the children share the same initials, we have distinguished them using numbers 1 and 2 throughout this memorandum decision.

By way of background relevant to this appeal, *In re J.L.*, No. 15-0199, 2015 WL 6181440 (W. Va. Oct. 20, 2015) (memorandum decision), concerned a child abuse and neglect petition filed in the Circuit Court of Cabell County against petitioner mother regarding the children at issue in this appeal. *Id.* That petition alleged that, "while the children were present and crying, [petitioner mother] was videotaped screaming, destroying the family home, threatening to kill herself and the children, stating she no longer wanted the children, stomping on a kitten, and speeding in and out of the driveway." *Id.* at \*1 (Internal quotations omitted.) While the petition further named both respondent father and petitioner's then-husband, "it appears no allegations were made against them." *Id.*

At an adjudicatory hearing regarding the petition in *J.L.*, petitioner mother stipulated that "she emotionally abused the children, had a mental health condition, and required mental health treatment." *Id.* Following an improvement period, the circuit court dismissed the petition and reunified petitioner mother with the children under a shared parenting plan that designated respondent father as the primary residential parent and provided that the children would alternate living with each of their parents on a weekly basis. *Id.* In *J.L.*, this Court affirmed the denial of petitioner mother's petition for modification in which she sought to be designated as the primary residential parent. *Id.*

Pursuant to the shared parenting plan, petitioner mother had parenting time with the children on January 25, 2021. The oldest child, J.L.-2, was not at home because he was at a friend's house. J.L-1, who was thirteen years old at the time and at home, made two phone calls to 911 that evening. During the first call, J.L.-1 reported that petitioner mother and her boyfriend were arguing and that J.L.-1 was hiding in her closet. J.L.-1 wanted respondent father to pick her up. During the second call, petitioner mother and her boyfriend were still arguing, and J.L.-1 reported that she did not feel safe. J.L.-1 further reported that petitioner mother was threatening her with a firearm. J.L.-1 explained that petitioner mother did not have the firearm in her immediate possession as "it is in the safe." The 911 operator heard "[a] female in the background screaming."

J.L.-1 also called respondent father, who arrived at petitioner mother's residence. Around the same time, J.L.-2 arrived home from his friend's house. Once respondent father showed proof that he was the primary residential parent, the responding police officers allowed him to take custody of the children. Thereafter, on the children's behalf, respondent father filed a petition in the Magistrate Court of Cabell County for a DVPO against petitioner mother. The magistrate court denied the petition.

Due to the prior child abuse and neglect proceeding in *J.L.*, the circuit court heard respondent father's appeal from the DVPO's denial. At a February 10, 2021, hearing, J.L.-1 testified that, on January 25, 2021, petitioner mother "threatened to either kill herself or just kill me" and that petitioner mother "threaten[ed] to use a gun." J.L.-1 further stated that she was afraid to be at petitioner mother's home. The circuit court offered petitioner mother the opportunity to cross-examine J.L.-1, but she declined to do so. The circuit court asked J.L.-1 if she believed that it was also unsafe for J.L.-2 to live with petitioner mother. J.L.-1 indicated that it was unsafe for both herself and her brother.

2

Petitioner mother presented the testimony of herself and her boyfriend. Both testified that their January 25, 2021, argument never became a physical altercation. Petitioner mother further stated that she did not own a firearm and never threatened to use a firearm. According to petitioner mother, there were "several discrepancies" in J.L.-1's version of events, but she chose not to cross-examine J.L.-1 because the child was "a nervous wreck" during her testimony.

At that point, the circuit court made a finding that J.L.-1 was "very credible" because J.L.-1 did not act "in a manner that leads me to believe that she was being untruthful" and did not present as overly nervous. Petitioner mother acknowledged that J.L.-1 was "[n]ot overly" nervous during her testimony. The circuit court further found that, based on petitioner mother's boyfriend's testimony, there was "a fight" and that it "escalated probably beyond what [petitioner mother] realize[d]."

The Child Protective Services ("CPS") worker who engaged with petitioner mother and the children during the fall of 2020 testified as a neutral witness.[3] The CPS worker stated that he reviewed the 911 transcripts and agreed with petitioner mother that some "inconsistencies" existed in J.L.-1's version of events. However, the CPS worker stated that both J.L.-1 and J.L.-2 believed that petitioner mother had mental health issues. According to the CPS worker, the DHHR communicated a willingness to arrange counseling for petitioner mother, but "[s]he doesn't feel that she needs it." Ultimately, the CPS worker testified that the January 25, 2021, incident "made [J.L.-1] feel uneasy, and she called the police and went to [respondent father's home] to feel like she needed to be safe."

Accordingly, by order entered on February 23, 2021, the circuit court found, by a preponderance of the evidence, that the January 25, 2021, incident placed J.L.-1 in reasonable apprehension of physical harm. The circuit court issued a ninety-day DVPO against petitioner mother and ordered her to "refrain from abusing, harassing, stalking, threat[e]ning, intimidating[,] or engaging in conduct that places [the children] in reasonable fear of bodily injury." The circuit court awarded custody of the children to respondent father. The circuit court noted its expectation that one of the parties or the DHHR would seek to modify the shared parenting plan and/or reopen the abuse and neglect proceeding in *J.L.* Therefore, the circuit court appointed a guardian ad litem for the children. The circuit court further ordered that supervised visitation with the children by petitioner mother was within the discretion of the guardian ad litem and the DHHR. The circuit court entered an amended DVPO on March 15, 2021, to reflect its ruling that petitioner could continue to participate in educational decisions for the children.[4]

On March 16, 2021, the children's guardian ad litem filed a motion to reopen the abuse

---

[3]The CPS worker testified that, for several months prior to January of 2021, "non-court services" were provided to the family due to J.L.-2's behavioral issues and that their case was transferred to youth services so that services could continue.

[4]The circuit court made the ruling regarding educational decisions at the February 10, 2021, hearing in response to an inquiry by the CPS worker.

and neglect proceeding in *J.L.* By order entered on April 5, 2021, the circuit court reopened the abuse and neglect proceeding due to the finding of domestic violence in the instant case and ordered that the DVPO shall remain in effect unless specifically changed.[5] The only modification to the DVPO was that the circuit court ordered that respondent father shall "be the parent who has contact with [the children's] schools." By order entered on August 9, 2021, the circuit court further modified the DVPO by directing that there shall be no visitation with the children by petitioner mother until she undergoes appropriate treatment for issues identified by a recent parental fitness evaluation. Finally, the circuit court again ordered that the DVPO in the instant case shall remain in effect.

Petitioner mother now appeals the DVPO issued for the protection of her minor children. "Upon an appeal from a [DVPO], this Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syl. Pt. 1, *John P.W. on Behalf of Adam and Derek W. v. Dawn D.O.*, 214 W. Va. 702, 591 S.E.2d 260 (2003). "On an appeal to this Court[,] the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which [she] complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).

On appeal, petitioner mother argues that her rights to due process of law were violated.[6] "The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard." Syl. Pt. 2, *Simpson v. Stanton*, 119 W. Va. 235, 193 S.E. 64 (1937); *State ex rel. Peck v. Goshorn*, 162 W. Va. 420, 422, 249 S.E.2d 765, 766 (1978) (same). We have further held that a person alleging a violation of due process of law must demonstrate that she suffered prejudice thereby. *See* Syl. Pt. 2, *Reed v. Staffileno*, 239 W. Va. 538, 803 S.E.2d 508 (2017) (holding that a person alleging an undue delay in the revocation of his license to operate a motor vehicle must show that he suffered prejudice as a result of the delay). Here, petitioner mother concedes that she had notice of the February 10, 2021, hearing, and, based upon our review of the transcript of that hearing, we find that petitioner mother had an opportunity to be heard.

We now address the specific due process violations that petitioner mother alleges. Petitioner mother first argues that she did not have notice of J.L.-1's allegations that petitioner mother punched her in her arms during a separate incident in the fall of 2020 and that petitioner

---

[5]The DVPO was scheduled to expire on May 12, 2021.

[6]Petitioner mother further argues that discovery did not occur pursuant to Rule 10 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. Pursuant to Rule 1 of the Rules of Procedure for Child Abuse and Neglect Proceedings, those rules govern child abuse and neglect proceedings under West Virginia Code §§ 49-4-601 to 49-4-610. Therefore, we agree with the position of respondent father and the children's guardian ad litem that the Rules of Procedure for Child Abuse and Neglect Proceedings did not apply in the instant case as it was a domestic violence proceeding pursuant to West Virginia Code §§ 48-27-101 to 48-27-1105.

mother threatened J.L.-1 with a firearm during the January 25, 2021, incident. We find that the 2020 incident was not considered by the circuit court due to its ruling (in response to evidentiary requests by both parties) that it would consider only the January 25, 2021, incident at the hearing. Therefore, we conclude that petitioner cannot show that her due process rights were violated with regard to the 2020 incident because, pursuant to the circuit court's ruling, that incident was not relevant to the DVPO petition before it.

With regard to the firearm allegation, both petitioner mother and the CPS worker testified that there were discrepancies in J.L-1's version of events, and petitioner mother specifically denied that she threatened the use of a firearm. Due to the findings made by the circuit court during the hearing, we find that the firearm allegation was not the basis of the court's ultimate finding that the January 25, 2021, incident involved domestic violence. Rather, based upon petitioner mother's boyfriend's testimony, the circuit court found that there was "a fight" and that it escalated to such an extent that J.L.-1 felt unsafe in her mother's home.

As noted by the children's guardian ad litem, West Virginia Code § 48-27-202 provides that

> "[d]omestic violence" or "abuse" means the occurrence of one or more of the following acts between family or household members, as that term is defined in [West Virginia Code § 48-27-204]: (1) Attempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons; *(2) Placing another in reasonable apprehension of physical harm*; (3) Creating fear of physical harm by harassment, stalking, psychological abuse or threatening acts; (4) Committing either sexual assault or sexual abuse as those terms are defined in articles eight-b and eight-d, chapter sixty-one of this code; and (5) Holding, confining, detaining or abducting another person against that person's will.

(Emphasis added.) We agree with the guardian ad litem's position that the circuit court relied upon West Virginia Code § 48-27-202(2) in making its finding of domestic violence. Based upon our review of the circuit court's findings, we find that the circuit court determined that, notwithstanding any dispute regarding petitioner mother's specific conduct, the January 25, 2021, incident placed J.L.-1 in reasonable apprehension of physical harm. Accordingly, even if petitioner mother did not have notice of the firearm allegation,[7] we conclude that petitioner cannot show that she was prejudiced because that allegation did not form the basis of the circuit court's ruling.

Petitioner mother's last due process argument is that the circuit court declined to hear testimony from a family friend whom petitioner mother wanted to call as a witness. According to petitioner mother, one of the discrepancies in J.L.-1's version of events was that J.L.-1 told the police on January 25, 2021, that the family friend was present during the incident leading to the

---

[7]J.L.-1 told the 911 operator that petitioner mother was threatening her with a firearm. The parties dispute whether the 911 transcripts were attached to the DVPO petition filed by respondent father on the children's behalf.

filing of the DVPO. The circuit court ruled that it did not need to hear the family friend's testimony because, at the hearing, J.L.-1 did not testify that the family friend was present during the January 25, 2021, incident, and petitioner mother agreed that the family friend "wasn't there." Due to the circuit court's ruling that it was considering only the January 25, 2021, incident, we conclude that petitioner mother cannot show that the ruling that the family friend's testimony was unnecessary violated her due process rights given that the family friend was not present during the incident.

Petitioner mother further argues that there was insufficient evidence to support the issuance of the DVPO. West Virginia Code § 48-27-501(a) provides, in pertinent part, that "[u]pon final hearing, the court shall enter a [DVPO] if it finds, after hearing the evidence, that the petitioner has proved the allegations of domestic violence by a preponderance of the evidence."[8] In *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995), we found that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *Id.* at 669 n.9, 461 S.E.2d at 175 n.9. Rule 52(a) of the West Virginia Rules of Civil Procedure provides, in pertinent part, that, when a court sits without a jury, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Despite certain inconsistencies in her version of events, the circuit court found that J.L.-1 was a credible witness following its opportunity to judge her demeanor during her testimony. As found above, the circuit court also relied upon petitioner mother's boyfriend's testimony. Finally, the CPS worker testified that the January 25, 2021, incident caused J.L.-1 to believe that she needed to be picked up by respondent father in order to feel safe. Therefore, based upon our review of the record, we conclude that petitioner mother cannot show that the circuit court abused its discretion in issuing the DVPO based upon a preponderance of the evidence.

For the foregoing reasons, we affirm the circuit court's March 15, 2021, amended order issuing a DVPO against petitioner mother for the protection of her minor children.

Affirmed.

**ISSUED:** February 1, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton

---

[8]As respondent father and the children's guardian ad litem note, in petitioner mother's initial brief, she erroneously argues that the applicable burden of proof was beyond a reasonable doubt.

6