**FILED**
**October 26, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Monique Lacy,**
**Plaintiff Below, Petitioner**

**vs.)     No. 21-0890** (Kanawha County 21-AA-19)

**Workforce West Virginia Board of**
**Review,**
**Defendant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Monique Lacy appeals the September 15, 2021, order of the Circuit Court of Kanawha County affirming a February 25, 2021, order of Respondent Workforce West Virginia Board of Review ("Board") that disqualified petitioner from receiving unemployment benefits.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

From August 20, 2019, to June 8, 2020, petitioner worked as a caregiver for Special Touch Nursing Service, Inc. After that employment ceased, petitioner applied for unemployment benefits on July 26, 2020. In that application, she indicated that she voluntarily quit because her employer was not paying a fair wage.

A deputy commissioner of Workforce West Virginia, by a decision dated September 28, 2020, denied petitioner's claim for unemployment benefits. The deputy commissioner determined that petitioner failed to prove that her separation from employment involved fault on the part of her employer. Accordingly, the deputy commissioner disqualified petitioner from receiving unemployment benefits "beginning June 7, 2020, and until she returns to covered employment and has been employed therein at least thirty (30) working days."

---

[1]Petitioner is self-represented. The Board appears by counsel Mark S. Weiler.

1

Petitioner appealed the deputy commissioner's decision to an administrative law judge ("ALJ") with the Board on September 29, 2020, and included the following statement:

*I quit my job on June 8, 2020, due to* [*an*] *issue with payment*. I had to go to the labor board[2] to be paid for the time I cared for my mother[-]in[-]law. I had a W4[,] and they investigated but could not prove all the wages, the employer turned in a paystub with different dates than I was hired to care for [my mother-in-law].[3] My [mother-in-law] had to go into the hospital and did not want services any longer, I went back to work . . . as a temp caregiver. After the temp job[,] I was never called back to work with any more clients.

*I did not give the employer a reason for quitting. I stayed employed*[,] *but they have never called me back to care for any clients.* I am currently on light duty. I am able, available[,] and seeking full-time work.

*I did not attempt to resolve the situation prior to quitting. I did not try to resolve because I have not quit. I was simply not contacted by* [*the employer*] *to give care to any clients. I said* [*"*]*quit*[*"*] *because I didn*[*'*]*t know what other name to call this.* I simply finished my contract with [my mother-in-law], worked as a caregiver [as] a temp placement[,] and was never called back to work.

(Emphases and footnotes added.)

The ALJ scheduled a telephonic hearing for October 27, 2020, at 10:00 a.m. On October 16, 2020, the ALJ mailed petitioner a hearing notice and a document titled "Telephonic Appeal Hearing Checklist." The hearing notice included a section, set off in a box, that stated: "**To initiate the hearing, you <u>must</u> notify the Board of a telephone number where you may be contacted for the hearing. You may provide us with your number by calling [a specified 1-800 number]. Please call in your number immediately upon receipt of this [h]earing [n]otice.**" (Emphasis and underlining in original.) Petitioner was further advised that a "[f]ailure to contact this office with a number prior to the day of the hearing will result in that party not being included in the scheduled hearing or of a dismissal of the case for [a] failure of the appellant to appear and prosecute the claim." On its reverse side, the notice provided, "**<u>EVEN THOUGH YOUR TELEPHONE NUMBER MAY BE IN THE ORIGINAL PAPERWORK, YOU STILL NEED TO NOTIFY THE [BOARD] AT [THE SPECIFIED 1-800 NUMBER] WITH A</u>**

---

[2]It is unclear what government agency petitioner is referencing in her statement about "the labor board."

[3]Petitioner states that one of her work assignments from her employer was to provide care to her mother-in-law. Presumably, that work assignment could have caused the disagreement between petitioner and her employer regarding the amount of her compensation as she could have also provided care to her mother-in-law outside of her scheduled work.

**PHONE NUMBER WHERE YOU CAN BE REACHED ON THE DATE AND TIME OF THE HEARING.**" (Emphasis and underlining in original.) Petitioner was "**encouraged to provide the [Board] with [her] name and telephone number not less than 2 days before the hearing date.**" (Emphasis in original.)

On the separate checklist document, petitioner was further advised that she needed to read "the front and back" of the hearing notice and to "**CALL THE RIGHT OFFICE**" as the Board and the "[l]ocal [o]ffice are **NOT** the same." (Emphasis and underlining in original.) That checklist specifically advised, "Do **NOT** call your [l]ocal [o]ffice for information, as they are not the office responsible for appeals." (Emphasis and underlining in original.) Finally, it was explained that petitioner "**MUST** call and give the Board . . . your telephone number" because the parties should "not call the [ALJ]" and that, with the parties' phone numbers, the ALJ "can get all [of the] parties on the line so everyone can participate." (Emphasis in original.)

Petitioner failed to provide her contact telephone number to the Board and appear for the October 27, 2020, hearing. Accordingly, petitioner's employer, who appeared at the hearing, moved to dismiss her appeal. The ALJ granted the employer's motion, ruling that "[petitioner]'s appeal is dismissed and the deputy [commissioner]'s decision [is] affirmed unless [petitioner] can provide good cause to the [Board] for failing to provide a contact telephone number to participate in this hearing and prosecute her appeal."

On November 5, 2020, petitioner appealed the ALJ's decision to the Board. Petitioner acknowledged that she received the notice and checklist for the October 27, 2020, hearing.[4] Petitioner argued that "[her] phone number was listed on the paperwork" and that "there has been [a] miscommunication because I didn't think I had to do anything but wait on the call." Petitioner explained: "I waited for a call for 10 am on the above date and called the deputy office at 10:15 am on [October 27, 2020.] I was told I was not on [the] docket because I didn't call ahead of time." Accordingly, petitioner requested that the Board remand her case to the ALJ.

The Board, by order entered on February 25, 2021, found that the ALJ made a proper ruling and adopted the ALJ's findings. Addressing the merits of petitioner's claim for unemployment benefits, the Board further found that petitioner was "[d]isqualified until [she] return[ed] to covered employment and has been employed therein at least thirty days" as she "left work voluntarily without good cause involving fault on the part of the employer." Finally, the Board determined that "good cause is not shown" for a remand of the case to the ALJ.

Petitioner appealed the Board's February 25, 2021, order to the Circuit Court of Kanawha County. The circuit court, by scheduling order entered on March 31, 2021, directed the Board to file the administrative record with the court on or before April 30, 2021. The circuit court further ordered petitioner and the Board to file briefs. Petitioner's brief was due on June 1, 2021, and the Board's brief was due on July 20, 2021. The circuit court noted that, if a party's brief was not filed

_____

[4]In her appeal to the Board, petitioner refers to receiving the "form/notice" for the October 27, 2020, hearing.

timely, it "may be stricken." Finally, the circuit court set a hearing on petitioner's appeal on July 30, 2021, but noted that it may dispose of the matter "without a hearing."

Petitioner filed her brief on June 2, 2021. But, the Board failed to file either the administrative record or a brief. On August 5, 2021, petitioner filed a motion for default judgment. The circuit court, by an order entered on August 25, 2021, noted the unsuccessful attempts that court staff had made to obtain the administrative record from the Board. Accordingly, the circuit court ruled that, if the Board did not file the administrative record by September 3, 2021, it would be sanctioned $500 per day. While the circuit court did not address petitioner's motion for default judgment, it no longer required the Board to file a brief. The Board complied with the August 25, 2021, order by filing the administrative record on September 2, 2021.

Thereafter, the circuit court, by a final order entered on September 15, 2021, affirmed the Board's February 25, 2021, order disqualifying petitioner from receiving unemployment benefits. The circuit court found that the Board did not err in dismissing petitioner's appeal due to her failure to appear for the October 27, 2020, hearing. The circuit court further found that the Board "did not err in finding that [p]etitioner voluntarily quit her job based on her own application for unemployment compensation benefits and the lack of contradictory evidence the record."

Petitioner appeals from the circuit court's September 15, 2021, order affirming the Board's February 25, 2021, order that disqualified her from receiving unemployment benefits. West Virginia Code § 21A-6-3(1) provides as follows:

> [A]n individual is disqualified for benefits . . . (1) [f]or the week in which he or she left his or her most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days.

In this case, we utilize the following standard of review:

> "The findings of fact of the Board of Review of [Workforce West Virginia][5] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*." Syllabus point 3, *Adkins v. Gatson*, 192 W. Va. 561, 453 S.E.2d 395 (1994).

Syl. Pt. 1, *Childress v. Muzzle*, 222 W. Va. 129, 663 S.E.2d 583 (2008) (footnote added). The "legal conclusion that [an employee] quit her job 'voluntarily without good cause involving fault on the part of the employer' within the meaning of West Virginia Code § 21A-6-3(1) . . . is subject to a *de novo* standard of review." *Verizon Servs. Corp. v. Epling*, 230 W. Va. 439, 443, 739 S.E.2d

---

[5]Prior to 2007, Workforce West Virginia was known as the Bureau of Employment Programs. *See* W. Va. Code § 21A-1-4 (2007) (as amended by 2007 W. Va. Acts ch. 27).

290, 294 (2013) (quoting *May v. Chair & Members, Bd. of Review*, 222 W. Va. 373, 376, 664 S.E.2d 714, 717 (2008)).

On appeal, petitioner argues that she was denied due process of law during the administrative process and before the circuit court. "The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard." Syl. Pt. 2, *Simpson v. Stanton*, 119 W. Va. 235, 193 S.E. 64 (1937); *State ex rel. Peck v. Goshorn*, 162 W. Va. 420, 422, 249 S.E.2d 765, 766 (1978) (same). Petitioner acknowledges that she received the notice and checklist for the October 27, 2020, hearing, which was her opportunity to present testimony and evidence in support of her claim for unemployment benefits.

The circuit court found that the notice and checklist for the October 27, 2020, hearing made the procedure for appearing at the telephonic hearing "abundantly clear" to petitioner. For example, while petitioner argued to the Board that "[her] phone number was listed on the paperwork" and that "there has been [a] miscommunication," the notice and checklist emphatically advised petitioner that she was required to call the Board prior to the hearing date, if not "immediately upon receipt of this [h]earing [n]otice," to provide a telephone number so that the ALJ could reach her despite the presence of her telephone number in the administrative file. (Emphasis omitted.) Therefore, we concur with the circuit court's finding that petitioner's mistaken belief, that she could wait for someone to call her on the day of the hearing, was unreasonable. Accordingly, we conclude that the circuit court properly found that the Board did not err in dismissing petitioner's appeal due to her failure to appear for the October 27, 2020, hearing.

Petitioner further complains that the circuit court ultimately ruled on her appeal without holding a hearing. However, petitioner had notice of that possibility because the circuit court reserved the right to dispose of her appeal without a hearing in its March 31, 2021, scheduling order. As found above, the October 27, 2020, hearing before the Board's ALJ constituted petitioner's opportunity to present testimony and evidence in support of her claim for unemployment benefits, and she unreasonably failed to appear for that hearing. *See* W. Va. Code § 21A-7-19 (providing that an employment benefits claimant "shall exhaust [her] remedies before the [B]oard before seeking judicial review"). Therefore, we conclude that petitioner's due process rights to notice and an opportunity to be heard were not violated by the circuit court's decision not to hold a hearing.

Next, petitioner mischaracterizes the record by arguing that the circuit court showed partiality toward the Board by encouraging it to file a brief. As the circuit court notes in its August 25, 2021, order, court staff unsuccessfully attempted to have the Board file the administrative record with the court as required by both the March 31, 2021, scheduling order and West Virginia Code § 21A-7-26, which provides, in pertinent part, that the Board "shall certify and file with the court all documents and papers and a transcript of all testimony taken in a disputed claim together with its findings of fact and decision thereon." After the circuit court set a new deadline in its August 25, 2021, order, the Board filed the administrative record in compliance with that order. There is no evidence that the circuit court encouraged the Board to file a brief, and no such brief

was filed. Therefore, we reject petitioner's argument that the circuit court showed partiality toward the Board as without merit.

Given the directive in the circuit court's scheduling order that the parties file briefs, petitioner further argues that the court should have granted her motion for default judgment due to the Board's failure to file a brief. However, petitioner cites no authority, beyond the original scheduling order, for the requirement that the Board file a brief. The scheduling order did not provide for the entry of default judgment if a party failed to file a brief. Rather, the scheduling order provided that, if a party's brief was not filed timely, the brief could be stricken from the record. Given the terms of the scheduling order, we reject petitioner's argument that the circuit court should have granted her motion for default judgment. While the scheduling order required both parties to file a brief, we conclude that the Board's failure to do so did not violate petitioner's due process rights to notice and an opportunity to be heard, as petitioner filed a brief in compliance with the scheduling order.[6]

Finally, petitioner argues that she did not voluntarily quit her job without good cause involving fault on the part of her employer. The Board counters that, pursuant to West Virginia Code § 21A-6-3(1), before an individual is entitled to benefits after voluntarily quitting her employment, the employee must prove that the employer was at fault. We find that the Board's position is in accord with our decision in *Verizon Services Corp.*, in which we reversed a circuit court's ruling that the employee made the required showing that she left her job with good cause and that the good cause involved fault on the part of her employer. 230 W. Va. at 446-48, 739 S.E.2d at 297-99.[7]

Petitioner reiterates that she quit her job "due to [an] issue with payment," which is consistent with the statement in her application for unemployment benefits that she voluntarily left her employment because she did not believe that the employer was paying a fair wage. In petitioner's appeal from the initial denial of benefits, she further stated that her employer eventually stopped calling her into work to provide care to clients. However, petitioner also indicated that she caused her employer not to give her new work assignments as she "did not give the [e]mployer a reason for quitting" and "did not attempt to resolve the situation prior to quitting." Due to the number of times petitioner uses the terms "quit" or "quitting" in the statement that she included with her initial appeal, we find the statement to be self-contradictory and consistent with her earlier statement in the benefits application that she voluntarily left her employment. Therefore, we concur with the circuit court's finding that the Board did not err in finding that

---

[6]The circuit court's March 31, 2021, scheduling order gave petitioner the option to file a reply; however, because the Board did not file a brief, petitioner had no need to do so.

[7]As we explained in *Verizon Services Corp. v. Epling*, 230 W.Va. 439, 739 S.E.2d 290 (2013), the purpose of the Unemployment Compensation Law, West Virginia Code §§ 21A-1-1 to 21A-11-1, is to protect workers from "employers who *wrongfully cause* their employees to voluntarily leave their employment." *Id.* at 446, 739 S.E.2d at 297 (internal quotations and citations omitted; emphasis by the Court).

petitioner quit her job voluntarily and without good cause involving fault on the part of her employer based upon "her own application for unemployment compensation benefits and the lack of contradictory evidence in the record." Accordingly, we conclude that the circuit court properly affirmed the Board's February 25, 2021, order that disqualified petitioner from receiving unemployment benefits pursuant to West Virginia Code § 21A-6-3(1).[8]

For the foregoing reasons, we affirm the circuit court's September 15, 2021, order upholding the Board's February 25, 2021, order.

Affirmed.

**ISSUED**: October 26, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

---

[8]We note that, while the circuit court affirmed the Board's February 25, 2021, order on only two grounds, it noted that petitioner made a "multitude" of arguments. We have stated that, "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but [which] are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996); *see also State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (finding that cursory treatment of an issue is insufficient to raise it on appeal). Furthermore, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides, in pertinent part:

> *Argument:* The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The . . . Supreme Court may disregard errors that are not adequately supported by specific references to the record on appeal.

To the extent that petitioner raises issues that we have not addressed herein, we decline to review all such issues pursuant to Rule 10(c)(7).

7